## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALECIA ALDRICH, | : CIVIL ACTION NO: |
|      PLAINTIFF, | |
| V. | : |
| | |
| TOWN OF BLOOMFIELD, | : |
| PHILLIP SCHENCK, TOWN MANAGER; | |
| PAUL B.  HAMMICK, CHIEF OF POLICE; | |
| CINDY COVILLE, HUMAN RESOURCES DIRECTOR; | |
| ARTHUR FREDERICKS, POLICE LIEUTENANT; | : |
| JAMES SALVATORE, POLICE LIEUTENANT; | |
| CHRISTINE BENVENUTO, POLICE SERGEANT; | |
| AND ELLEN WHITE, POLICE SERGEANT; | |
|               DEFENDANTS | : APRIL 8, 2017 |

## <u>COMPLAINT</u>

I.  **<u>NATURE OF ACTION</u>**

1.      This is an action for sex and race discrimination, quid pro quo and hostile work environment sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C.§ 2000 et. seq., the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983, the Connecticut Fair Employment Practices Act C.G.S. § 46a-51 et seq., and related tort of intentional infliction of emotional distress under the common law of the State of Connecticut. The Plaintiff was terminated in retaliation for complaining about these violations.

II.  **<u>JURISDICTION AND VENUE</u>**

2.      The Court has jurisdiction over the subject matter of this action pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§1331, 1343, and 1367.

3.      Venue is proper within this judicial district pursuant to 28 U.S.C. §1391 because all of the events or omissions giving rise to the claims occurred in the State of Connecticut and this District.

### III.   PARTIES

4.      The Plaintiff, ALECIA ALDRICH ("Aldrich"), at all times mentioned in this action a white female Police Officer employed by the Town of Bloomfield, until her termination October 7, 2016, and a resident and citizen of the State of Connecticut.

5.      The Defendant, PHILLIP SCHENCK ("Schenck"), at all times mentioned herein was the Town Manager of the Town of Bloomfield. He is sued in his individual and official capacity.

6.      The Defendant, PAUL B.  HAMMICK ("Hammick"), at all times mentioned herein was the Chief of Police of the Town of Bloomfield. He is sued in his individual and official capacity.

7.      The Defendant, CINDY COVILLE ("Coville"), at all times mentioned herein was the Director of Human Resources of the Town of Bloomfield. She is sued in his individual and official capacity.

8.      The Defendant, ARTHUR FREDERICKS ("Fredericks"), at all times mentioned herein was a Police Lieutenant of the Town of Bloomfield. He is sued in her individual and official capacity.

9.      The Defendant, JAMES SALVATORE ("Salvatore"), at all times mentioned herein was a Police Lieutenant of the Town of Bloomfield. He is sued in his individual and official capacity.

10.     The Defendant, CHRISTINA BENVENUTO ("Benvenuto"), at all times mentioned herein was a Police Sergeant of the Town of Bloomfield. She is sued in her individual and official capacity.

11.   The Defendant, ELLEN WHITE ("White"), at all times mentioned herein was a Police Sergeant of the Town of Bloomfield. She is sued in her individual and official capacity

12.   The Defendant, TOWN OF BLOOMFIELD ("Bloomfield"), was a duly incorporated municipal corporation in the State of Connecticut.

IV.   **FACTS APPLICABLE TO ALL CAUSES OF ACTION**

13.   This case involves systemic discrimination and unequal treatment based upon sex, gender and race, quid pro quo and hostile work environment sexual harassment, and retaliation.

14.   Prior to her employment at Bloomfield, on May 18, 2015 as a Police Officer, Aldrich worked for five years at Fairfield University and as a security officer for the Connecticut National Guard.

15.   Aldrich was a conscientious, hard-working and successful law enforcement officer for many years when she joined the BPD.

16.   Fredericks was the commander of the Bloomfield Police Department ("BPD") patrol division and Aldrich's supervisor.

17.   Fredericks is a Command Sergeant Major in the Connecticut National Guard.

18.   Fredericks met Aldrich at a "SWAT" challenge in which she was participating with her National Guard security unit and subsequently recruited her to apply to the BPD, giving her T-shirts and other police paraphernalia and telling her she would "fit in and do well" at BPD.

19.   Fredericks promoted an inappropriate intimate relationship with Aldrich, using his position as commander of the patrol division throughout the course of Aldrich's employment at the BPD to objectify and sexually harass her.

20.   Prior to the oral board for her employment application to BPD, Fredericks improperly conveyed to Aldrich the questions for the oral board that would be asked and told her how she should answer them.

21.   Aldrich naively believed that Fredericks' conduct was legitimate and that he was mentoring her.

22.   Fredericks initiated unsolicited personal and sexually suggestive communications including texting photos depicting him clothed outside a shower only in a towel, intimate and inappropriate comments about Aldrich's body and false communications that he was "taking care of  you".

23.   Fredericks sent texts to Aldrich throughout her employment at BPD and in the texts and in person referring to her, in intimate  and sexual ways, as  "sweetheart" and "meatball".  He also referred at "triple trifecta" a reference to Aldrich's

24.   Fredericks, who is married, had Aldrich meet him on numerous occasions at Penwood State Park in Bloomfield to go on "runs", and after asked her to come to his home to shower.

25.   Fredericks made sexually suggestive comments to Aldrich and told her, after one of these runs, "I want to throw you up against a tree, kiss your neck and finger your pussy."

26.   Fredericks brought Aldrich to other "runs" out of state, where he attempted to get her to sleep with him.

27.   Fredericks engaged in this conduct in order to subjugate Aldrich, and advance his perverted sexual agenda.

28.   Aldrich was swept up in this relationship and unable to extricate herself for fear of retaliation.

29.   Fredericks used this same sexually motivated predatory grooming with other probationary female employees.

30.     Benvenuto continually referred to sex among police officers and fostered a profane, crude and sexually and racially charged environment, calling female officers "fucking bitches" and "sluts".   On numerous occasions, Benvenuto stated concerning Aldrich and other white female probationary officers, "We have to stop hiring these crazy white females" and other similar hostile remarks.  Benvenuto told Aldrich that the only way to succeed at BPD is by "fucking the right people".

31.     Benvenuto told Aldrich and others that she knew Aldrich was having sex with Fredericks.

32.     BPD detective Spellman told Aldrich, "you should have fucked Art to keep your job".

33.     Throughout Aldrich's employment, defendants and supervisors, and co-workers expressed and were aware of a sexually and racially charged atmosphere and hostility toward Aldrich and other similarly situated female probationary officers.

34.     White was both a supervisor and president of the local police union.  In her capacity as union president White colluded with Schenck, Hammick and management in order to deny Aldrich her rights to competent representation.

35.     Throughout Aldrich's employment, White refused and neglected to adequately represent white, female probationary members.   White neglected these union members in return for favorable treatment by management.  This "selling out" of her obligations as a union advocate enabled the defendants to violate Aldrich's, and other similarly situated officers rights.

36.     White and Benvenuto fostered, the hostile work environment and discriminatory actions of the other male defendants.  This included sexist statements and collusion with management in the discriminatory environment, discipline and corruption of the grievance process and collective bargaining agreement.

37.     White's malfeasance was a result of her discriminatory animus against other female officers.

38.     Lieutenant Willauer, another commander at BPD, told each female probationary officer, right after they were sworn in, "remember we can fire you anytime we want."

39.     Schenck, Coville, Hammick, Fredericks, Salvatore, Benvenuto and White were aware, refused to investigate, and allowed this sexual harassment and hostile work environment to remain.

40.     During the same time period as Aldrich's employment, two other white, female probationary officers: "SN" and "LW" were similarly sexually harassed and discriminated, denied their due process and equal protections rights and unlawfully terminated because of their sex and race.

41.     On September 27, 2016, Hammick met with Aldrich, and planned to coerce her into resigning as he had done with "LW" and "SN".  Hammick postponed this agenda when Aldrich complained regarding the sexual harassment and discrimination.

42.     "LW" and "SN" and others probationary female officers were solicited for "runs" at Penwood Park forest by Fredericks; asked to come to his home to swim in his pool and/or shower.

43.     Defendants knew or should have known, that Fredericks had sexually harassed other female probationary officers in a similar fashion, grooming them for his sexual gratification.

44.     At the September 27, 2016 meeting Hammick stated that he was opening a sexual harassment investigation.

45.     Despite being a respondent to Aldrich's sexual harassment complaint, Hammick demanded and ordered plaintiff to appear in his office and answer his questions

regarding her sexual harassment complaint made September 27, 2016, and that he stated was against "Lieutenant Fredericks".

46.     Despite demand and stating that he would investigate the Aldrich's complaints, Hammick refused to investigate Aldrich's claims.

47.     On April 3, 2016, Aldrich, while on duty and responding with lights and siren, to a pedestrian hit by a motor vehicle call was struck by a motor vehicle. Aldrich and the other vehicle occupant were injured.

48.     Aldrich was denied proper training and not provided competent Field Training Officer training, which a direct cause of the accident and claims made that were used to terminate her employment.

49.     On or about March 31, 2016, Schenck and Hammick initiated an internal investigation ("IA") into the accident.

50.     Despite the investigation being completed, defendants refused to provide Aldrich notice and to the date of this complaint she has still not been provided the results of that internal investigation.

51.     Defendants maliciously, unethically, corruptly and in violation of the collective bargaining agreement held the motor vehicle accident and DUI investigations in limbo, refused to inform Aldrich of the findings and denied her notice.

52.     On or about August 8, 2016, Hammick and Schenck assigned Lieutenant Salvatore to conduct a sham and discriminatorily motivated IA ["Administrative Report 16-23854], regarding a motor vehicle stop and driving while intoxicated ("DUI") arrest by Aldrich on May 20, 2016.  The investigation was that there were "inaccurate details written within the described arrest report".

53.     Salvatore conducted a biased investigation, ignored facts and manipulated past practice in order to find misconduct by Aldrich.

54.     Salvatore's "Findings" in the IA were unsupported by the facts and regulations, and past practice. Salvatore falsely and maliciously found that Aldrich committed "Intentional misconduct" by "providing false information" in violation of the BPD General Orders.

55.     Salvatore's findings were used as a pretext basis for Aldrich's dismissal.

56.     After Aldrich's September 27, 2016 complaint, at the behest of Schenck and Hammick, Salvatore harassed and intimidated her with numerous annoying phone calls, and inappropriate and improper inquiries and threats of discipline.

57.      Defendants had knowledge of her complaints and refused to investigate them.

58.     Bloomfield has a sexual harassment policy that says prohibits:  "unwelcome advances or requests for sexual favors or any conduct of a sexual nature when: Submission to such conduct is made either explicitly or implicitly a term or condition of employment; Submission or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or Such conduct has the purpose or effect of substantially interfering with an individual's work performance or creating an intimidating, hostile or offensive working environment."

59.     Bloomfield's sexual harassment policy specifically identifies the Director of Human Resources and Town Manager are contact persons for complaints. Pursuant to the Town of Bloomfield's personnel rules, the Human Resources Director is required to investigate all complaints of discrimination.

60.     Bloomfield's sexual harassment policy states that all complaints will be investigated "promptly and thoroughly' and "in such a way as to maintain confidentiality…" and "any person who reports unlawful harassment or cooperates in the investigation…will be protected from retaliatory action."

61.  Hammick's General Order No. 26 prohibits sexual harassment and states: "Sexual harassment consists of any type of undesired sexual approach, demand for sexual favors, and any other verbal or physical behavior of a sexual nature or that is reproduced by using any means of communication including, but not limited to, the use of multimedia tools through the cybernetic network or through any electronic means, when one or more of the following circumstances occur: 1. When submission to said conduct is made explicitly or implicitly a term or condition of an individuals employment; 2. When submission to or rejection of such conduct by any individual is used as the basis for employment decisions affecting such individual; or 3. When the conduct has the purpose or effect of substantially interfering with an individuals work performance or creating an intimidating, hostile or offensive working environment."

62.  Hammick's General Order No. 2-07-9,10 and 11 prohibits unethical conduct, and violation of the department or Bloomfield harassment/discrimination policies and "conduct unbecoming an employee".

63.  The defendants did not adhere to of their own polices in how they treated and in how they responded to Aldrich's complaints. These policies, which conform with state and federal discrimination laws were violated by the same persons entrusted to enforce them.

64.  On September 27, 2016 the defendants were first notified of Aldrich's complaint, subsequently on October 6, 2016 Schenck and Coville were personally notified, in writing, of Aldrich's sexual harassment and discrimination complaint.

65.  The sexual harassment and discrimination complaint to Schenck and Coville stated that it "concerns specific members of your police department command staff, including Chief Hammick, LT Salvatore, LT Fredericks, SGT Benvenuto and others".

66.     Aldrich also requested that Schenck and Coville investigate without the involvement of Chief Hammick and his command staff, as they were the subjects of the sexual discrimination complaint.

67.     Schenck and Coville refused to investigate and instead directed Hammick to immediately fire Aldrich; in order to avoid having to investigate her complaints, to which Hammick eagerly complied.

68.     As a direct and proximate result of Aldrich's refusing Fredericks' sexual advances and in retaliation for Aldrich's complaints about discrimination and harassment, the defendants terminated her employment causing her significant economic, emotional and professional harm.

## V.     COUNT ONE--SEXUAL HARASSMENT (TITLE VII)

69.     Plaintiff realleges all paragraphs as set forth fully herein.

70.     This lawsuit is brought under 42 U.S.C. § 2000 et seq. (Title VII) and it's counterpart 42 U.S.C. § 1981 which prohibits employers from discriminating "against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin. " *See e.g.* 42 U.S.C. § 2000e-2(a).  Plaintiff would show that (i) she is a member of a protected class; (ii) that she was qualified for the position; (iii) that she suffered an adverse employment action; and (iv) others outside the class who were similarly situated were treated more favorably than she was treated.

71.     Aldrich was discriminated against based upon her sex and race. As a proximate cause of this discrimination, plaintiff is unemployed.

72.     Fredericks was a supervisor for Bloomfield and in that capacity exacted a "quid pro quo" sexual harassment against Aldrich in violation of Title VII.

73.     The defendants, jointly and severally fostered a "hostile work environment" against Aldrich in violation of Title VII.

74.     Aldrich received a "Release of Jurisdiction" letter from the Connecticut Commission on Human Rights and Opportunities ("CHRO") and United States Equal Employment Opportunity Commission ("EEOC") on March 21, 2017 (Attached as Exhibit A).

75.     As a direct and proximate result of defendants harassing, discriminatory and retaliatory treatment of her, plaintiff has suffered, and continues to suffer, adverse job consequences, including economic damages, pain, mental anguish, loss of enjoyment of life and damage to her reputation and career.

## VI.     COUNT TWO--FOURTEENTH AMENDMENT PROCEDURAL DUE PROCESS

76.     Plaintiff realleges all paragraphs as set forth fully herein.

77.     The Fourteenth Amendment Procedural Due Process Clause requires "notice and an opportunity to be heard" prior to a deprivation of government employment.

78.     Aldrich had a property interest in her government employment.

79.     At no point prior to her termination was plaintiff advised that her employment with the Town of Bloomfield might be terminated.

80.     Before Aldrich appeared for a meeting called by Chief Hammick she had filed her sexual harassment complaints against him and the other defendants.

81.     Chief Hammick did not advise Aldrich of his intent to terminate Aldrich before he, along with Coville and Bloomfield's labor counsel ordered her to appear on September 27, 2016 and again on October 6, 2016.

82.     Aldrich was denied the required notice prior to her termination.

83.     Aldrich had no other post-termination process to remedy any mistaken decision.

84. As a direct and proximate result of defendants' denial of procedural due process, plaintiff has suffered, and continues to suffer, adverse job consequences, including economic damages, pain, mental anguish, loss of enjoyment of life and damage to her reputation and career.

## VII.   COUNT THREE –FOURTEENTH AMENDMENT EQUAL PROTECTION

85. Plaintiff realleges all paragraphs as set forth fully herein.

86. The Equal Protection Clause of the Fourteenth Amendment commands that no government "deprive to any person within its jurisdiction the equal protection of the laws" and requires that the government treat all similarly situated people alike.

87. Aldrich is a member of a "female.

88. The defendants, by their conduct violated the Equal Protection rights guaranteed to Aldrich by the Fourteenth Amendment to the United States Constitution.

89. Aldrich was part of a "protected class", a distinct group of individuals, white/female probationary police officers, which Bloomfield categorically treated differently.

90. Aldrich was subjected to selective enforcement of discipline in that she was (1) treated differently from other similarly situated individuals, and (2) that such differential treatment was based on impermissible consideration of her race and sex and intended to inhibit her exercise of her rights and inflicted with malice, bade faith and intent to injure.

91. "Similarly situated" individuals include, but are not limited to: Officer Loignon a white male, Officer Benitez a black female, Officer Danaher a white male,  Sergeant Thomas, a black female, Detective Spellman, a white male, Sergeant Bowen a white male.

92. These similarly situated officers were all treated differently, and more favorably, with respect to discipline.   Loignon was involved in driving while intoxicated incident and was not terminated.  Officer Danaher was found to have gone through

an intersection, against a red light at speeds in excess of 77 miles per hour, he was not terminate. Thomas was Aldrich's supervisor in the DUI stop that was used to dismiss her and although found to have committed the same misconduct was not terminated. Spellman was found to be intoxicated on duty and was not terminated. Bowen was found to have stolen overtime work from fellow officers and was not terminated.

93.     As a direct and proximate result of defendants' denial of her equal protection under the law the plaintiff has suffered, and continues to suffer, adverse job consequences, including economic damages, pain, mental anguish, loss of enjoyment of life and damage to her reputation and career.


## VIII.    COUNT FOUR –TITLE VII RETALIATION

94.     Plaintiff realleges all paragraphs as set forth fully herein.

95.     Defendants retaliated against Aldrich in violation of 42 U.S.C. § 2000e-3 [Section 704], which prohibits employers from retaliating against an employee "because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing, under this subchapter."

96.     The reason advanced by the defendants for terminating Aldrich's employment was a pretext for her discriminatory and retaliatory termination.

97.     As a direct and proximate result of defendants' retaliation the plaintiff has suffered, and continues to suffer, adverse job consequences, including economic damages, pain, mental anguish, loss of enjoyment of life and damage to her reputation and career.

## IX.     COUNT FIVE--CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT

98.     Plaintiff realleges all paragraphs as set forth fully herein.

99.     Defendant Town of Bloomfield, by and through its agents and/or employees violated the Connecticut Fair Employment Practices Act ("CTFEPA"), CGS § 46a-60(a)(1) and § 46a-81(c) et seq. in one or more of the following ways:

   a.    In that defendant interfered with plaintiff's privilege of employment on the basis of plaintiff's sex and;

   b.    In that defendant interfered with plaintiff's privilege of employment on the basis of plaintiff's race:

   c.    In that defendant discriminated against the plaintiff in such a way that it adversely affected her status as an employee;

   d.    In that defendant treated plaintiff adversely different from similarly situated black  or Hispanic employees;

   e.    In that defendant treated plaintiff adversely different from similarly situated male employees;

   f.    In that defendant terminated plaintiff's employment; and

   g.    In that defendant intentionally discriminated against the plaintiff.

   h.    Defendants' termination of plaintiff was in retaliation for her claim and opposing discrimination and violated the CTFEPA CGS § 46a-60(a)(4).

## X.      COUNT SIX –INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

100.    Plaintiff realleges all paragraphs as set forth fully herein.

101.    The acts and conduct of the individual defendants constitute intentional infliction of emotional distress upon the Plaintiff, for which the defendants are liable to the plaintiff at common law.

102.     The defendants' intended to inflict emotional distress, or knew that or should have
        known that emotional distress was a likely result of their conduct

103.     The defendants' conduct was extreme and outrageous.

104.     The defendants' conduct caused the plaintiff severe emotional distress and caused
        the plaintiff damages.

**XI.     ACTUAL DAMAGES**

105.     Plaintiff incorporates all preceding paragraphs as set forth fully herein.

106.     Plaintiff pleads for pre and post judgment interest at the maximum allowable rate.
        Plaintiff is entitled to actual damages, back pay, front pay, out of pocket expenses,
        loss of benefits, consequential damages, damage to her reputation past and future,
        lost and future wages, lost and future wage earning capacity.

**WHEREFORE**, THE PLAINTIFF CLAIMS:

   1.   Compensatory money damages from each defendant;

   2.   Punitive damages from each defendant;

   3.   Any and all nominal damages from each defendant;

   4.   Attorney's fees as provided by 42 U.S.C. § 1988. and the Title VII;

   5.   Common law attorneys fees;

   6.   All costs associated with the bringing of this lawsuit;

   7.   Such other relief as in equity may pertain.

## CLAIM FOR A JURY TRIAL

The plaintiff requests a trial by jury for all issues in this case.



PLAINTIFF



BY:    /S/    *James S. Brewer*

_____
James S. Brewer
67 Russ Street
Hartford, CT 06106
860-217-0652
Fed Bar No. ct 07019
jbreweratty@gmail.com

16