UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALECIA ALDRICH,<br>    Plaintiff,<br><br>v.<br><br>TOWN OF BLOOMFIELD, PHILLIP SCHENCK, PAUL B. HAMMICK, CINDY COVILLE, ARTHUR FREDERICKS, JAMES SALVATORE, CHRISTINE BENVENUTO, ELLEN WHITE;<br>    Defendant. | No. 3:17-CV-00581 (VLB)<br><br>February 22, 2018 |

**MEMORANDUM OF DECISION ON MOTION TO DISMISS [DKT. NO. 13]**

Before the Court is Defendants' Motion to Dismiss filed May 11, 2017 and fully briefed on September 12. 2017. [Dkt. 13 (Mot. Dismiss); Dkt. 18 (Extension Mot.); Dkt. 19 (Order); Dkt. 30 (Opp'n); Dkt. 31 (Reply)]. Plaintiff Alecia Aldrich ("Aldrich") brings this action to recover for her alleged unlawful employment termination. She raises counts of sexual harassment and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, et seq., violations of procedural due process and equal protection under the Fourteenth Amendment, violation of the Connecticut Fair Employment Practices Act ("CFEPA"), and intentional infliction of emotional distress ("IIED") against Defendants Town of Bloomfield ("Town"), Town Manager Phillip Schenck ("Schenck"), Chief of Police Paul B. Hammick ("Hammick"), Human Resources Director Cindy Coville ("Coville"), Police Lieutenant Arthur Fredericks ("Fredericks"), Police Lieutenant James Salvatore ("Salvatore"), Police Sergeant Christine Benvenuto

1

("Benvenuto"), and Police Sergeant Ellen White ("White"). Defendants move to dismiss all counts except the CFEPA claim. For the foregoing reasons, the Court GRANTS Defendants' motion.

## Background

The following facts are taken from the Complaint and assumed to be true for the purposes of this motion. Aldrich worked at Fairfield University as a security officer for the Connecticut National Guard from approximately 2010 until 2015. *See* [Dkt. 1 (Compl.) ¶ 14]. Fredericks is a Command Sergeant Major in the Connecticut National Guard. *Id.* ¶¶ 8, 17. Aldrich and Fredericks met at a "SWAT" challenge for her National Guard security unit, and Fredericks recruited her to apply to the Bloomfield Police Department ("BPD"). *Id.* ¶ 18. Fredericks gave her t-shirts and other paraphernalia, and he told her that she would "fit in and do well" at the BPD. *Id.*

Aldrich alleges Fredericks "promoted an inappropriate intimate relationship" with her an "us[ed] his position as commander of the patrol division" to "objectify and sexually harass" Aldrich while she was employed at the BPD. *Id.* ¶ 19. Fredericks sent "unsolicited personal and sexually suggestive communications," such as texts depicting him in a towel outside a shower and calling her "sweetheart" and "meatball." *Id.* ¶ 22. Fredericks also commented on her body and told her he was "taking care of" her. *Id.* Fredericks and Aldrich met on multiple occasions to go on runs at Penwood State Park, and afterwards he asked her to go to his home and shower with him. *Id.* ¶ 24. On one occasion after a run, Fredericks said to Aldrich, "I want to throw you up against a tree, kiss

your neck and finger your pussy." *Id.* ¶ 25.  Aldrich alleges he said other sexually suggestive comments.  *Id.*  He also tried to get Aldrich to have sex with him.  *Id.* ¶ 26.  Aldrich alleges she was "swept up" in the relationship with Fredericks and could not "extricate herself for fear of retaliation."  *Id.* ¶ 28.

Fredericks engaged in the same sexual behavior with other "probationary female employees."  *Id.* ¶ 29.  Fredericks solicited two other white female probationary officers to go on "runs" at Penwood Park.  *Id.* ¶ 42.

Benvenuto repeatedly spoke about sex among police officers.  *Id.* ¶ 30.  She "fostered a profane, crude and sexually and racially charged environment.  *Id.* For example, Benvenuto referred to female officers as "fucking bitches" and "sluts."  *Id.*  On multiple occasions, Benvenuto stated, "We have to stop hiring these crazy white females."  *Id.* She also told Aldrich that "the only way to succeed at BPD is by 'fucking the right people'" and that she knew Aldrich was having sex with Fredericks.  *Id.* ¶¶ 30-31.

The Complaint alleges Schenck and Hammick initiated an investigation "into the accident" on March 31, 2016.  *Id.* ¶ 49.  However, it is unclear what accident they investigated because the accident—wherein Aldrich responded to a motor vehicle accident and was herself hit by a motor vehicle, sustaining injuries—is alleged to have occurred on April 3, 2016.  *Id.* ¶ 47.  Aldrich alleges that her denial of proper field officer training was the direct cause of the accident.  *Id.* ¶ 48.  Aldrich was not provided notice or results of the investigation.  *Id.* ¶ 50.

3

The Complaint also refers to a motor vehicle stop and driving while intoxicated arrest that Aldrich conducted on May 20, 2016. *Id.* ¶ 52. On August 8, 2016, Hammick and Schenck assigned Lieutenant Salvatore to conduct "a sham and discriminatorily motivated" internal investigation regarding the motor vehicle stop and driving while intoxicated arrest. *Id.* ¶ 52. It was concluded that "there were 'inaccurate details written within the described arrest report.'" *Id.* Aldrich alleges "Salvatore conducted a biased investigation, ignored facts and manipulated past practice in order to find misconduct by Aldrich." *Id.* ¶ 53.

Aldrich complained of sexual harassment and discrimination on September 27, 2016 to Hammick. *Id.* ¶ 41. While Aldrich was employed, two other white, female probationary officers were "similarly sexually harassed and subjected to discrimination, denied their due process and equal protections rights and unlawfully terminated because of their sex and race." *Id.* ¶ 40. Hammick "coerced" these two individuals into resigning. *Id.* ¶ 41. Aldrich alleges Hammick told her he would open a sexual harassment investigation. *Id.* ¶ 44. He "demanded and ordered" her to speak with him in his office about Fredericks's actions. *Id.* ¶ 45. Aldrich alleges Hammick never initiated an investigation. *Id.* ¶ 46. Aldrich also alleges Schenck, Coville, Hammick, Fredericks, Salvatore, Benvenuto and White "were aware, refused to investigate and allowed this sexual harassment and hostile work environment to remain," although she does not provide additional facts. *Id.* ¶ 39.

Schenck and Coville were thereafter notified in writing of Aldrich's complaint. *Id.* ¶ 64. The complaint "concern[ed] specific members of [the] police

4

department command staff, including Chief Hammick, LT Salvatore, LT Fredericks, SGT Benvenuto, and others." *Id.* ¶ 65. Aldrich requested Schenck and Coville investigate the matter without Hammick's involvement "as they were the subjects of the sexual discrimination complaint." *Id.* ¶ 66. Instead of investigating the case, Schenck and Coville immediately fired her. *Id.* ¶ 67. After Aldrich was fired, Detective Spellman said to her, "You should have fucked Art to keep your job." *Id.* ¶ 32.

Aldrich alleges Ellen White, a supervisor and president of the local police union, "colluded with Schenck, Hammick and management" to deny Aldrich competent representation while acting in her capacity as the union president. *Id.* ¶ 34. Aldrich alleges "White refused and neglected to adequately represent white, female probationary members" and that she "neglected these union members in return for favorable treatment by management." *Id.* ¶ 35. Aldrich alleges White fostered a hostile work environment and discriminatory actions by the male defendants, and "[t]his included sexist statements and collusion with management in the discriminatory environment, discipline and corruption of the grievance process and collective bargaining agreement." *Id.* ¶ 36.

The Town of Bloomfield has a sexual harassment policy that prohibits "unwelcome advances or requests for sexual favors or any conduct of a sexual nature." *Id.* ¶ 58. The policy identifies the Director of Human Resources and the Town Manager as contact people for sexual harassment complaints, upon which it is required that an investigation ensue. *Id.* ¶ 59. Such investigations are to be conducted "promptly and thoroughly" in a manner that maintains confidentiality

and protects the complainant from retaliation. *Id.* ¶ 60. Hammick also instituted General Order No. 26, which prohibits sexual harassment. *Id.* ¶ 61. General Order Nos. 2-07-09, 10, and 11 also prohibit unethical conduct. *Id.* ¶ 62.

## Legal Standard

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a motion to dismiss for failure to state a claim, the Court should follow a "two-pronged approach" to evaluate the sufficiency of the complaint. *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010). "A court 'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "At the second step, a court should determine whether the 'wellpleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any

documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). The Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005)

## Analysis

The Complaint alleges six counts but it does not specify against whom each count is alleged. In briefing the motion to dismiss, Plaintiff clarifies who is the intended defendant for each count. Accordingly, the Court will review against whom each claim is asserted at the beginning of each section.

I. <u>Count I and IV: Title VII Claims (Sexual Harassment and Retaliation)</u>

Plaintiff intends Count I and IV to be asserted only against the Town of Bloomfield. Defendants initially moved to dismiss both Title VII claims for failure to exhaust administrative remedies with the EEOC. Plaintiff subsequently filed on the docket an EEOC "Right to Sue" letter, [Dkt. 29], and accordingly Defendants withdrew this argument, *see* [Dkt. 31 at 1 n.1]; *see Francis v. City of New York*, 235 F.3d 763, 768-69 (2d Cir. 2000) ("We hold that presentation of a Title VII claim to the EEOC is not a jurisdictional [prerequisite], but only a precondition to bringing a Title VII action that can be waived by the parties or the court, and that defendants waived that precondition in this case.") (internal quotation marks and citations omitted). Therefore, Counts I and IV against the Town will proceed and

Plaintiff is directed to file an Amended Complaint that clearly and concisely states she brings these claims against the Town.

There still exists some confusion about whether Plaintiff also intends to assert Count III against certain individual Defendants. On page 3 of Plaintiff's opposition, she asserts that her "<u>claims</u> under Title VII are solely against the defendant Town of Bloomfield." [Dkt. 30 at 3 (emphasis added)]. Yet on page 7, she avers that her retaliation claims "are solely against the defendants Schenck, Hammick and Coville and the Town of Bloomfield." *Id.* at 7. The Court will treat Plaintiff's briefing as intention to retain a retaliation claim against these individuals as well as the Town. As Defendants pointed out in the motion to dismiss, it is well-settled that Title VII does not confer individual liability on supervisors. *See Mandell v. Cty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) ("[T]he district court's dismissal of plaintiff's Title VII claims against Gallagher in his personal capacity must be affirmed because under Title VII individual supervisors are not subject to liability."); *Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) (recognizing the district court appropriately dismissed the Title VII claims against individual defendants "[b]ecause Title VII does not impose liability on individuals"). Therefore, the Court DISMISSES the Title VII retaliation claims against Schenck, Hammick, and Coville.

II. <u>Count II: Fourteenth Amendment Due Process</u>

Although the Complaint does not specify against whom Count II is brought, Plaintiff clarifies in the briefing this claim pertains only to the Town and the

8

Individual Defendants in their individual capacities. Defendants argue Count II should be dismissed Plaintiff did not sufficiently allege a property interest in her continued employment as a probationary officer. [Dkt. 13-1 at 17-18]. Plaintiff responds that she was a "full-time permanent employee when she was hired and could only be terminated for just cause," but she also admits that her probationary period was extended as a result of the investigation into the motor vehicle accident and DUI. [Dkt. 30 at 5]. She largely refers to herself as a "probationary officer." *See, e.g.,* [Dkt. 1 ¶¶ 30, 33, 89].

"To determine whether a plaintiff was deprived of property without due process of law in violation of the Fourteenth Amendment, we must . . . identify the property interest involved." *O'Connor v. Pierson*, 426 F.3d 187, 196 (2d Cir. 2005). This analysis requires a two-part process: (1) "determine whether some source of law other than the Constitution, such as a state or federal statute, confers a property right on the plaintiff;" and if a property right exists, "determine whether that property right constitutes a property interest for purposes of the Fourteenth Amendment." *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir.2010) (internal quotation marks and citations omitted). A person's property interest in a *benefit* requires "a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

"A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent 'just cause' for discharge." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002); *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002) ("Indeed, in this circuit, a

person may possess a protected interest in public employment if contractual or statutory provisions guarantee continued employment absent "sufficient cause" for discharge. . . ."); *Ritz v. Town of East Hartford*, 110 F. Supp. 2d 94, 101-02 (D. Conn. 2000) (citing *Regents*, 408 U.S. at 576-78); *Zeyer v. Bd. of Educ.*, 98 F. Supp. 3d 425, 434 (D. Conn. 2015) (same). The counterpoint to this rule is that an at-will employee does not have a property interest in continued employment. *See Abramson*, 278 F.3d at 99 ("Employees at will have no protectable property interest in their continued employment.").

Plaintiff describes herself as a "probationary officer" throughout the Complaint. [Dkt. 1 ¶¶ 30, 33, 38, 43, 89]. Plaintiff cannot amend her complaint with assertions contained in an objection to a motion to dismiss. *See Natale v. Town of Darien, Conn.*, CIV. 3:97CV583 (AHN), 1998 WL 91073, at *4 n. 2 (D. Conn. Feb. 26, 1998) (plaintiff cannot amend complaint in a memorandum of law) (citing *Daury v. Smith*, 842 F.2d 9, 15-16 (1st Cir. 1988)); *Ruocco v. Tung*, 302CV1443(DJS), 2004 WL 721716, at *6 n. 4 (D. Conn. Mar. 30, 2004) (same); *MacGillivray v. Whidden*, 3:04CV1523(CFD), 2006 WL 587593, at *3 (D. Conn. Mar. 10, 2006) (plaintiff may not amend complaint in memorandum in opposition to motion to dismiss). A probationary officer does not have a property interest in continued employment, absent legislation, because she is not a permanent employee. *See Farrish v. Town of East Hartford*, 2 F. App'x 110, (2d Cir. 2001) ("Under Connecticut law, a 'probationary employee, in the absence of legislation, is not entitled to the protective procedure accorded a career or permanent employee.'") (quoting *Millard v. Connecticut Personnel Appeal Bd.*, 170 Conn.

541, 547 (1976); see also *Negron v. City of New York*, No. 10 CV 2757(RRM)(LB), 2011 WL 4737068, at *18 (E.D.N.Y. Sept. 14, 2011) (recognizing a probationary officer does not have a property interest in continued employment). Plaintiff has not identified any legislation suggesting she could not be terminated unless for just cause and she has not pleaded any *facts* demonstrating she is a permanent employee. Accordingly, Count II is DISMISSED for failure to plead a property interest.

### III. Count III: Fourteenth Amendment Equal Protection

Plaintiff contends that Count III is brought solely against the Town, Schenck, Coville, and Hammick. Defendant argues Count III should be dismissed against all Defendants[1] for two reasons: because Plaintiff has failed to (1) identify similarly situated comparators who were treated more favorably, and (2) assert facts that support her termination was based on her protected classifications. Plaintiff responds only to the first argument and states that all police officers are similarly situated, and some who were favorably treated are listed in the Complaint. [Dkt. 30 at 6]. She also argues Officer Loignon, Benitez, and Danaher were probationary officers who were treated differently, but she does not provide facts indicating how or why they were treated differently and she these officers are not mentioned in the Complaint. *Id.*

---

[1] Defendants recognize the Fourteenth Amendment equal protection violation claim brought under 42 U.S.C. § 1983 against the Town is commonly understood as a *Monell* claim. See [Dkt. 13-1 at 19]. Because Defendants do not challenge the *Monell* claim itself, the Court will not address its validity at this stage.

The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). In order to succeed on an equal protection claim, the plaintiff must prove that: "(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure [the plaintiff]." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000). Alternatively, failing proof of selective treatment based on impermissible considerations, a plaintiff may demonstrate an equal protection violation by proving that the defendants "intentionally treated [him] differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). This latter type of claim is often referred to as a "class of one" equal protection claim. *Id.*

Although it is true that "[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury," a plaintiff must nonetheless sufficiently plead that "she was 'similarly situated in all material respects' to the individuals with whom she seeks to compare herself." *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000) (addressing a Title VII disparate treatment claim); *Malcolm v. Honeoye Falls Lima Cent. Sch. Dist.*, 483 F. App'x 660, 662 (2d Cir. 2012) (stating the requirements for a Title VII disparate treatment claim apply to a § 1983 disparate treatment claim); *Patterson v. Food Grp. LLC/Pond House*

*Café*, 2004 WL 1701079, at *2 (D. Conn. Mar. 31, 2004) (regarding a discovery dispute, finding plaintiff who was employed on a probationary period not to be similarly situated to employees who had been working for four years); *Mercer v. City of Cedar Rapids*, 308 F.3d 840, 844 (8th Cir. 2002) (acknowledging at summary judgment that probationary troopers are not similarly situated to permanent troopers with respect to an equal protection claim brought under 42 U.S.C. § 1983).

The Complaint alleges "'[s]imilarly situated' individuals include, but are not limited to: Officer Loignon a white male, Officer Benitez a black female, Officer Danaher a white male, Sergeant Thomas a black female, Detective Spellman, a white male, Sergeant Bowen a white male." [Dkt. 1 ¶ 91]. However, merely stating the individuals are "similarly situated," is a legal conclusion, and Plaintiff does not present any facts showing how they might be similarly situated in any material respect. Plaintiff fails to satisfy the pleading standard for asserting that she is similarly situated to Officer Loignon who drove under the influence, Officer Danaher who violated a traffic law, Sergeant Thomas who was involved in the same misconduct for which Plaintiff was terminated, Detective Spellman who was intoxicated on duty, and Sergeant Bowen who "stole" overtime work from other officers. *See id.* ¶ 92. Therefore, Count III is DISMISSED against all Defendants for failure to plead facts identifying individuals who were "similarly situated" and establishing how they are "similarly situated" in all material respects.

## IV. Count VI: Intentional Infliction of Emotional Distress

Plaintiff intends to assert an IIED claim against the Town and all Individual Defendants in their individual and official capacities. Defendants argue the claims against the Town and the Individual Defendants in their official capacities should be dismissed because a plaintiff cannot bring an IIED claim against a town for the intentional tort of one of its employee.

The Court first addresses claims against the Town and all individuals in their official capacities. Section 52-557n of the General Statutes of Connecticut states in relevant part that "a political subdivision of the state shall not be liable for damages to person or property cause by: (A) acts or omissions of any employee, officer or agent which constitute . . . willful misconduct." Conn. Gen. Stat. § 52-557n(a)(2)(A). It is well-settled that this provision precludes a town and its employees acting in an official capacity from liability for an alleged intentional tort committed by an employee, because "intentional" is synonymous with "willful" under Connecticut law. *See Pane v. City of Danbury*, 267 Conn. 669, 685 (2004), *overruled in part on other grounds by Grady v. Town of Somers*, 294 Conn. 324, 330 (2009); *Avoletta v. City of Torrington*, 133 Conn. App. 215, 224 (Conn. App. Ct. 2012) (acknowledging that a municipality and any employee acting in an official capacity is immune from suit under Conn. Gen. Stat. § 52-557n unless immunity is abrogated by statute); *Miles v. City of Hartford*, 719 F. Supp. 2d 207, 218 (D. Conn. 2010) ("The Connecticut Supreme Court has clearly held that a political subdivision of the state is immune to suit based on intentional infliction of emotional distress by an employee."); *O'Brien v. Meriden*

14

*Bd. of Educ.*, No. 3:13-CV-1521-VLB, 2014 WL 4494390, at *2 (D. Conn. Sept. 12, 2014) ("In Connecticut, governmental immunity bars intentional tort claims against municipalities."). Therefore, Plaintiff's IIED claim against the Town and all Individual Defendants in their official capacities are DISMISSED.

Defendant also argues the IIED claims against Defendants Schenck, Hammick, Coville, Salvatore, and White in their individual capacities should be dismissed because Plaintiff fails to allege extreme and outrageous conduct. *See* [Dkt. 13-1 at 26]. This would leave IIED claims against only Defendants Fredericks and Benvenuto.

To make out a common law claim for intentional infliction of emotional distress in Connecticut, a plaintiff must show: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe. *Rivera v. Thurston Foods, Inc.*, 933 F. Supp. 2d 330, 343 (D. Conn. 2013) (citing *Petyan v. Ellis*, 200 Conn. 243, 200 Conn. 243, 253 (Conn. 1986)).

The Connecticut Supreme Court provided the following guidance to determine whether conduct is "extreme and outrageous":

> Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is

> one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress.

*Appleton v. Board of Educ. Of the Town of Stonington*, 254 Conn. 205, 210-11 (2000) (internal quotations and citations omitted). In considering whether a plaintiff's claim for IIED sufficiently alleges extreme and outrageous conduct, the court evaluates "the employer's conduct, not the motive behind the conduct." *Miner v. Cheshire*, 126 F. Supp. 2d 184, 195 (D. Conn. 2000) (citation omitted).

It is well settled that in Connecticut, including in recent precedent from the Connecticut Supreme Court, that "[w]hether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Perez-Dickson v. City of Bridgeport, et al.*, 304 Conn. 483, 527 (2012) (quoting *Appleton*, 254 Conn. at 210). "Only where reasonable minds disagree does it become an issue for the jury." *Id.* (quoting *Appleton*, 254 Conn. at 210).

Plaintiff essentially alleges Defendants Schenck, Hammick, Coville, Salvatore, and White played a role in investigating and ultimately terminating Plaintiff's employment. The most "extreme" or "outrageous" allegation against any of these individuals is that Salvatore made "numerous annoying phone calls, and inappropriate and improper inquiries and threats of discipline;" and that Hammick ordered Plaintiff to answer his questions about her sexual harassment complaint. [Dkt. 1 ¶¶ 45, 56]. These allegations are simply not enough because

they are well within "the bounds usually tolerated by decent society." *Appleton*, 254 Conn. at 210. Therefore, the IIED claims against Schenck, Hammick, Coville, Salvatore, and White are DISMISSED.

## V. Additional Issues Raised by Defendant

Defendants moved to dismiss all counts against Defendant White for failure to plead *facts* sufficient to state a claim under Fed. R. Civ. P. 8(a). In light of the above, the only count remaining would be Count V, the CFEPA claim. The Court first notes that the Complaint does not indicate Count V is asserted against Defendant White. In addition, the Court agrees with Defendants that the Complaint presents legal conclusions that do not give rise to relief. For example, it is a legal conclusion that White "colluded with Schenck, Hammick and management" to deny Aldrich competent representation while acting in her capacity as the union president. *Id.* ¶ 34. It is both a legal conclusion and speculation that "White refused and neglected to adequately represent white, female probationary members" and that she "neglected these union members in return for favorable treatment by management." *Id.* ¶ 35. Aldrich cannot merely allege White fostered a hostile work environment and discriminatory actions without presenting facts demonstrating how she did so. *See id.* ¶ 36. Therefore, Count V against White is DISMISSED. To the extent Plaintiff intends to assert Count V against other Defendants, she is directed to amend the Complaint to (a) identify each and every Defendant who are alleged to have violated Count V; and (b) clearly and concisely plead sufficient facts establishing each Defendant's liability for Count V.

Defendant also argues that Plaintiff is not entitled to common law attorney's fees, *see* [Dkt. 13-1 at 36], an argument to which Plaintiff does not respond. Common law attorney's fees are warranted under very limited circumstances. *Castillo Grand, LLC v. Sheraton Operating Corp.*, 719 F.3d 120, 124-25 (2d Cir. 2013). The Court directs Plaintiff to evaluate whether common law attorney's fees are appropriate in this instance and amend the pleadings accordingly.

## Conclusion

Accordingly, for the aforementioned reasons, the following Counts against the following Defendants will proceed: Count I against the Town; Count IV against the Town; and Count V against all Defendants except Defendant White. All other Counts against all other Defendants are DISMISSED with prejudice. Plaintiff shall file an Amended Complaint on or before March 15, 2018 that adequately names each Defendant against whom each remaining Count is alleged and must in all other respects plausibly alleges claims upon which relief may be granted.

The parties are reminded that pursuant to the Court's scheduling order entered May 25, 2017, all discovery, including but not limited to depositions of expert witnesses, shall be completed by May 30, 2018. Dispositive motions are due by August 1, 2018. If no dispositive motions are filed, the joint trial memorandum is due by September 15, 2018, and jury selection will take place on November 6, 2018. If dispositive motions are filed, the joint trial memorandum is due by January 15, 2019, and jury selection will take place on March 3, 2019.

**Finally, if at any time the parties believe settlement discussions would be fruitful they are ordered to file a request for a referral to a magistrate judge for a settlement conference and promptly schedule the conference after the order of referral is entered. A timely request for referral and scheduling of the conference are required as the scheduling order will not be extended to accommodate settlement as it is an integral part of the litigation process.**

**IT IS SO ORDERED**

**_____/s/_____**

**Hon. Vanessa L. Bryant
United States District Judge**

**Dated at Hartford, Connecticut: February 22, 2018**